UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYESSIA ROSS,

     Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION
and SETERUS, INC.,

     Defendants.

_____/

Case No. 13-12656
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

**OPINION AND ORDER GRANTING
DEFENDANTS FEDERAL NATIONAL MORTGAGE ASSOCIATION AND
SETERUS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS [13]**

In this mortgage foreclosure case, Plaintiff Tyessia Ross seeks relief following the sheriff's sale of her Warren, Michigan home by Defendants Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. Plaintiff asserts fraudulent misrepresentation, estoppel, negligence, violation of the Michigan Consumer Protection Act, and breach of contract, all based on Defendants' alleged loan modification offer and noncompliance with a lender participation agreement for the Michigan's Hardest Hit Program. (Dkt. 1-2.) This matter is before the Court on Defendants' joint motion for judgment on the pleadings on all counts. (Dkt. 13.) For reasons set forth below, Defendants' motion is GRANTED.

## I. FACTUAL BACKGROUND

Because this matter is before the court on a Rule 12(c) motion for judgment on the pleadings, the Court accepts all of the non-conclusory allegations in the Complaint as fact and considers the same documents it would on a Rule 12(b)(6) motion to dismiss. *See Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012). In addition to the complaint itself, the Court

may examine "orders, items appearing in the case record, exhibits attached to the complaint, and documents referred to in the complaint and central to the plaintiff's claim." *Johnson v. Trott & Trott, P.C.*, 829 F. Supp. 2d 564, 568 (W.D. Mich. 2011). Also, the Court may consider materials that are "public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

The disputed Macomb County property is located at 3656 Poplar Avenue in Warren, Michigan ("the Property"). (Dkt. 1-2, Compl. at 1, ¶ 1.) Plaintiff executed a promissory note for $108,000 secured by a mortgage of the Property on March 2, 2007. (Dkt. 13-2, Mortgage.) Shelter Mortgage Company assigned the mortgage to Fannie Mae on May 24, 2011. (Dkt. 13-3, Assignment of Mortgage.) Seterus, Inc. served as the loan servicer during the time period relevant to this lawsuit. (*See* Dkt. 1-2, Compl., at 2, ¶ 16.)

After the reassignment of the mortgage, Plaintiff lost her job. (Dkt. 1-2, Compl., at 2, ¶ 6–7.) She continued to make her mortgage payments using her unemployment benefits and tax refund, and she communicated to the bank that she had no income and was experiencing financial hardship. (Dkt. 1-2, Compl., at 2, ¶ 8–12.)

After Plaintiff explained her financial situation, "the Bank" offered her a loan modification. (Dkt. 1-2, Compl., at 2, ¶ 10.) She asserts that she accepted, and began making payments under what she believed to be a modified agreement. (Dkt. 1-2, Compl., at 4, ¶ 29.) "The Bank" accepted two such payments but rejected a third attempt to make a modified payment. (Dkt. 1-2, Compl., at 4, ¶ 35.) Plaintiff eventually fell behind on her payments and Seterus initiated foreclosure proceedings. (Dkt. 1-2, Compl., at 4, ¶ 30.)

At some point in 2012, Plaintiff applied to the Michigan's Hardest Hit Program, i.e. Step Forward Michigan ("MHHP"), for assistance in reinstating her loan. (Dkt. 1-2, Compl., at 2, ¶

2

14.) MHHP approved her application, contingent on Defendants' acceptance of her participation in the program. (*Id.* at 17.) Seterus denied the program funds. (Dkt. 1-2, Compl., at 2, ¶ 16.)

The Michigan State Housing Development Authority's policy regarding lender approval of state loan programs, including MHHP, is attached as an exhibit to the Complaint:

> Upon notification by MHA that a borrower has been conditionally approved for H4HH, Servicer agrees to promptly accept or deny each borrower's participation in the H4HH Program. Servicer agrees that denial shall be only for good cause such as pending litigation, potential fraud, poor payment history, bankruptcy restrictions, and *foreclosure status* or if denied by investor or mortgage insurer for good cause. Once a borrower is accepted to the H4HH Program, Servicer shall not initiate foreclosure nor, if the borrower is already in the foreclosure process, conduct a foreclosure sale during the term of assistance. If a participating borrower is brought current through rescue assistance or other means, the Servicer will terminate the foreclosure action.

(Dkt. 1-2, Compl. Ex. C, E-mail of Mar. 11, 2013 from Cassel to Ross, at 1 (emphasis added).) Thus, the policy dictated that when Defendants rejected the funds, MHHP had to deny Plaintiff's eligibility, which MHHP did on October 22, 2012. (Dkt. 1-2 Ex. A to Compl., MHHP Letter.)

Defendants initiated foreclosure proceedings by at least September 17, 2012 and a sheriff's sale was held on or around October 17, 2012. (Dkt. 1-2, Compl., at 3 ¶ 19.) Fannie Mae purchased the property and executed a sheriff's deed on October 17, 2012. (Dkt. 13-4, Sheriff's Deed.) The deed provided that Plaintiff had until April 19, 2013 to redeem the property for $122,742.80, plus interest and expenses. (*Id.* at 4.)

Plaintiff eventually contacted her Congressman, Sander Levin, regarding Defendants' denial of the MHHP funds. (Dkt. 1-2, Compl., at 3, ¶ 20.) On February 13, 2013, Congressman Levin wrote a letter to Defendants requesting a "detailed explanation for turning down the Hardest Hit funds" and that Defendants "reconsider accepting the offer from the Hardest Hit program." (Dkt. 1-2 Ex. D to Compl., Levin Letter.) Fannie Mae eventually responded to Levin's request, explaining that the home "was in active foreclosure when [Plaintiff] received conditional

approval" and that Defendants required funding to be approved before the scheduled foreclosure date for the Property. (Dkt. 1-2, E-mail from Dale Dorr, at 3.) Notwithstanding this correspondence, Defendants did not work with Plaintiff to "straighten[] out her confusion as it relates to her approval in the Program." (Dkt. 1-2, Compl., at 3. ¶ 18, 21.)

To date, Plaintiff has been unable to modify her loan and the time to redeem has lapsed. (Dkt. 1-2, Compl., at 3, ¶ 22; Dkt. 13-4, Sheriff's Deed, at 4.)

## II.  PROCEDURAL HISTORY

Plaintiff filed suit in Macomb County Circuit Court on April 16, 2013. (Dkt. 1-2, Compl.) Defendants removed the case to this Court on June 17, 2013. (Dkt. 1.) Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c) on February 12, 2014. (Dkt. 13.) It is that motion that is now before the Court for disposition.

## III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(c) motion for judgment on the pleadings is analyzed under the same standard as a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291 (6th Cir. 2008). Thus, to survive Defendants' motion for judgment on the pleadings, Plaintiff "must allege 'enough facts to state a claim of relief that is plausible on its face.'" *Traverse Bay Area Int. Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Facial plausibility means that "the complaint has to 'plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged.'" *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs., LLC*, 700 F.3d 829,

835 (6th Cir. 2012) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "This standard does not require detailed factual allegations, but a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (citation and internal quotation marks omitted).

The court must "accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to plaintiffs." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). The court "need not, however, accept unwarranted factual inferences." *Id.* (citing *Twombly*, 550 U.S. at 570). Nor will the court entitle "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" to an assumption of truth. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

## IV. ANALYSIS

Plaintiff has attempted to plead five counts: (1) fraudulent misrepresentation (Count I); (2) estoppel (Count II); (3) negligence (Count III); (4) violation of the Michigan Consumer Protection Act (Count IV); (5) breach of contract (Count V). (*Id.*) Defendants say that these claims fail as a matter of law or lack factual matter to cross *Iqbal*'s plausibility threshold. The Court begins by addressing Defendants' argument that Plaintiff lacks standing because the statutory redemption period has expired. Because that argument does not carry the day under recent case law, the Court analyzes each of Plaintiff's claims and Defendants' corresponding arguments for dismissal individually.

### A. Plaintiff has standing to challenge the foreclosure.

In Michigan, non-judicial foreclosures are governed by statute. *See* Mich. Comp. Laws §
600.3204. "While the statutory scheme provides certain steps that the mortgagee must go
through in order to validly foreclose . . . it also controls the rights of both the mortgagee and the
mortgagor once the sale is completed." *Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d
355, 359 (6th Cir. 2013) (citation omitted). Following a Sheriff's sale, the statute provides the
mortgagor six months in which to redeem the property. Mich. Comp. Laws 600.3204(8); *Mitan
v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949, 951 (6th Cir. 2012). After the redemption period
expires, "the mortgagor's right, title, and interest in and to the property are extinguished."
*Conlin*, 714 F.3d at 359; *see also* Mich. Comp. Laws § 600.3236.

The Michigan courts have "drastically circumscribed" judicial review of foreclosures in
the interest of "impos[ing] order on the foreclosure process while still giving security and finality
to purchasers of foreclosed properties." *Conlin*, 714 F.3d at 359. The filing of a lawsuit
challenging the foreclosure does not toll the redemption period. *See Awad v. GMAC*, 2012 Mich.
App. LEXIS 804, at *12 (Mich. Ct. App. Apr. 24, 2012). "The Michigan Supreme Court has held
that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant
setting a foreclosure sale aside" after the redemption period expires. *Sweet Air Inv., Inc. v.
Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) (quoting *United States v. Garno*, 974 F.
Supp. 628, 633 (E.D. Mich. 1997)). This standard is a high one. *Conlin*, 714 F.3d at 360. In
addition, "[t]he misconduct must relate to the foreclosure procedure itself." *Conlin*, 714 F.3d at
360.

Defendants urge the Court to dismiss the Complaint in its entirety based on the expiration
of the statutory redemption period, arguing that Plaintiff now "lacks standing to invalidate the

6

foreclosure." (Dkt. 13, Def.'s Br., at 8.) Recent Sixth Circuit case law clarifies that the lapse of the statutory redemption period does not implicate standing issues. *Elsheick v. Select Portfolio Servicing, Inc.*, No. 13-2100, 2014 U.S. App. LEXIS 9675, at *11 (6th Cir. May 22, 2014); *see also Langley v. Chase Home Finance, LLC*, No. 10-604, 2011 U.S. Dist. LEXIS 32845, at *2 n.2 (W.D. Mich. Mar. 28, 2011) ("Plaintiffs in such cases are the last lawful owner and possessor of the property. . . . they often remain in continuing possession of the property . . . . [and] claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights. This certainly seems to satisfy the basic Article III requirement of "injury in fact," as well as any prudential considerations tied to a "zone of interests" analysis.") (cited with approval in *Elsheick*, 2014 U.S. App. LEXIS at *11–12).

"Of course, having standing to bring a claim does not mean [Plaintiff has] a valid claim on the merits. That is a different question." *Elsheick*, 2014 U.S. App. LEXIS at *12 (citing *Langley*, 2011 U.S. Dist. LEXIS 32845 at *2 n.2). The Court thus turns to Plaintiff's individual claims for relief.

### B. Plaintiff's alleged loan modification does not relate to the foreclosure process itself.

The majority of Plaintiff's claims stem from her alleged acceptance of a loan modification. (*E.g.* Dkt. 1-2, Compl., at 3–6 (asserting Count I, fraudulent misrepresentation of a loan modification; Count II, estoppel of Defendant's denial of a loan modification agreement, Count III, breach of duty to accept modified payments, and Count IV, false advertisement of loan modifications in violation of the Michigan Consumer Protection Act).) It appears that such claims do not assert "fraud or irregularity in 'the legal measures' of the foreclosure process." *See Williams v. Pledged Prop. II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012) ("[Plaintiff's] claim of fraud relies on oral assurances during a negotiation to change the terms of the contract. . . . these

negotiations remained separate from the foreclosure process itself. As such . . . they are not fraud or irregularity in 'the legal measures' of the foreclosure process."); *see also Wargelin v. Bank of Am.*, No. 12-15003, 2013 U.S. Dist. LEXIS 146326, at *17 (E.D. Mich. Oct. 10, 2013) (collecting cases); *Pientack v. JP Morgan Chase Bank, N.A.*, No. 12-12435, 2013 U.S. Dist. LEXIS 137263, at *12 (E.D. Mich. Sept. 25, 2013) ("[Plaintiffs] have claimed that Defendant made fraudulent statements in the loan servicing process relating to the amounts due on the mortgage loan. . . . Plaintiffs' failure to claim fraud or irregularity in the sale process itself defeats their attempt to challenge the foreclosure sale.").

Indeed, the loan modification process is governed under a statutory section separate from that governing foreclosure proceedings. Mich. Comp. Laws § 600.3205c. Arguably then, Defendants' failure to finalize a loan modification or accept modified payments, is not the type of "fraud or irregularity" contemplated by *Sweet Air*, 739 N.W.2d at 659.

Moreover, if Defendants violated the loan modification statute, Plaintiff's only remedy was to halt the foreclosure by advertisement proceedings and force Defendants to proceed via a judicial foreclosure. *Wargelin*, 2013 U.S. Dist. LEXIS 146326, at *17 ("[a] violation of [Michigan Compiled Laws] § 600.3205c only provides a borrower with an opportunity to enjoin the sale and force the foreclosure to be conducted *under the judicial foreclosure process*." (emphasis in original)); *see also Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012) ("[Plaintiffs] appear to have missed the boat regarding the applicability of the [loan modification statute] . . . they brought this action after the foreclosure sale occurred, and so there is no foreclosure to enjoin or convert."). Plaintiff did not avail herself of that relief.

**C. The Michigan Statute of Frauds bars claims to enforce the alleged loan modification agreement.**

Plaintiff's claims for fraudulent misrepresentation (Count I), estoppel (Count II), and negligence (Count III) are all anchored, at least in part, in her alleged approval for a loan modification. But Plaintiff has not alleged that the approval was in writing.

Under Michigan law, "certain types of agreements must be in writing before they can be enforced. . . . [and] [t]he burden of proving an enforceable agreement is even heavier when claiming against a financial institution." *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 920 (E.D. Mich. 2012). Michigan Compiled Laws § 566.132(2) provides in relevant part:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution: . . . . A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, *or other financial accommodation.*

(emphasis added). This statutory language "plainly states that a party is precluded from bringing a claim—no matter its label—against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech. Park v. D&N Bank, F.S.B.*, 619 N.W.2d 66, 71 (Mich. 2000). And because the statute by its language prohibits "an action" without specifying what kind of action, Michigan courts read it as an "unqualified and broad ban." *Id.* at 72.

Plaintiff has neither referred to nor presented the Court with a written, signed instrument outlining her loan modification. Nonetheless, she asks the Court to issue an order "granting reformation/modification of the Note and Mortgage" and, by her claims, asks the Court to find that Defendants breached their duties under the alleged loan modification. Such claims would force the Court to "acknowledge the existence and breach of an oral promise" made by

9

Defendants. *Kheder v. Seterus, Inc.*, No. 308227, 2013 Mich. App. LEXIS 586, at *36 (Mich. Ct. App. Mar. 28, 2013). Therefore, she cannot bring an action to enforce it.

Plaintiff's argument that her fraudulent misrepresentation claim (Count I) is not based on the loan modification itself, but rather, on Defendant's refusal to accept her modified payments is unavailing. (*See* Dkt. 19, Pl.'s Resp. Br., at 11.) The fraud claim is still "at its core, an action to enforce an oral promise" to accept payments under a modified agreement. *See Crown Tech.*, 619 N.W.2d at 74; *see also Kheder*, 2013 Mich. App. LEXIS at *36; *Meyer v. CitiMortgage, Inc.*, No. 11-13432, 2012 U.S. Dist. LEXIS 19548, at *29 (E.D. Mich. Feb. 16, 2012) ("M.C.L. 566.132(2) bars plaintiffs' fraud claims because plaintiffs have not alleged the existence of any documentary evidence signed by an authorized representative of [defendant] indicating that they would receive a financial accommodation in the form of a loan modification.") Plaintiff fails to cite any case law to the contrary. Plaintiff's argument that the Defendants' refusal to accept a third modified payment is an "issue of witness credibility" because it was based on a bank employee's "interpretations of bank policy" fails for the same reason: whatever the bank employee's interpretation, Plaintiff has not shown that it was in writing. (Dkt. 19, Pl.'s Resp. Br., at 11.)

Plaintiff has withdrawn her estoppel claim (Count II), and Defendants indicate that they consent to the dismissal of this claim. (Dkt. 19, Pl.'s Resp. Br., at 16 ("Plaintiff's estoppel claim appears to have been made in error. As such, Plaintiff withdraws this claim."); Dkt. 20, Def.'s Reply Br., at 1 n.1 ("Plaintiff did not seek consent in this instance, however, Defendants agrees [sic] to dismissal of Count II for estoppel.").

As for Plaintiff's claim of negligence (Count III), to the extent that it is "intimately related" to her fraudulent misrepresentation and estoppel arguments, it is also barred by the

statute of frauds. *See Crown Technology*, 619 N.W. 2d at 74. Plaintiff claims in part that Defendants owed her "a duty to accept her monthly payments under the modified agreement" and "communicate honestly" regarding the modification, and that Defendants breached their duty "by not communicating with Plaintiff honestly regarding her loan modification" and "by not accepting Plaintiff's third modified payment, when it had accepted the first two." (Dkt. 1-2, Compl., at 5 ¶ 39–43.) Accepting this argument would again force the Court to acknowledge an oral promise as the source of Defendants' alleged duty to accept her payments and therefore is barred under the statute of frauds.

### D. Plaintiff has not pled fraudulent misrepresentation with sufficient particularity.

In addition to being barred by the statute of frauds, Plaintiff's fraudulent misrepresentation claim fails to meet the heightened pleading standard for fraud claims. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Sixth Circuit "interpret[s] Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010).

"The elements constituting actionable fraud or misrepresentation are well-settled in Michigan." *Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813, 815 (Mich. 1976).

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it

should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Id.*; *accord Cummins v. Robinson Twp.*, 770 N.W.2d 421, 435 (Mich. Ct. App. 2009). "[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact." *Id.*; *see also Hi-Way Motor Co.*, 247 N.W. 2d at 815.

Plaintiff asserts that Defendant made "false representation[s]" that led her to believe she had been approved for a loan modification and that because she acted on that belief, she fell behind on her mortgage payments, triggering the foreclosure. (Dkt. 1-2, Compl., at 3–4, ¶ 23–31.) In support of this claim, Plaintiff states:

- Defendants represented to her that she was approved for a loan modification;

- Defendants stopped accepting her payments despite her compliance with the requirements for the loan modification;

- Defendants accepted two modified payments before telling her it would not accept her third payment;

- Plaintiff, in complying with Defendants' instructions, fell behind on her monthly payments; and

- Plaintiff "has suffered damages as a result."

(Dkt. 1-2, Compl. at 3–4.)[1]

---

[1] Plaintiff appears to change her version of the facts in her response brief, saying that instead of accepting her two modified payments, the bank told her that "she could make all of her payments or none of her payments." (Dkt 19, Pl.'s Resp. Br., at 7.) Nonetheless, the Court will consider the version of the facts in the Complaint because Plaintiff has not moved to amend her Complaint and "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Roulhac v. Southwest Reg'l Transit Auth.*, No. 07-408, 2008 U.S. Dist. LEXIS 119260, at *9 (S.D. Ohio Feb. 1, 2008) (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)); *see also Kallick v. U.S. Bank, N.A.*, No. 12-106, 2012 U.S. Dist. LEXIS 149975, at 19–20 (E.D. Tenn. Oct. 28, 2012) (declining to consider "new factual

These allegations fail to meet the heightened pleading standard for fraud claims. Plaintiff fails to allege, for example, the content of Defendants' alleged offer of a loan modification, the person who communicated the offer, how she received the offer, when the communication occurred, or even how she accepted the offer. Thus, Plaintiff has not "alleged any facts that put [Defendants] on notice as to who made the statements or when the statements were made." *Dingman*, 859 F. Supp. 2d at 920. Further, Plaintiff asserts one conclusory statement as to Defendants' intent: "The false representation was made with the intention that Plaintiff would act on it." (Dkt. 1-2, Compl., at 4 ¶ 28.)

Plaintiff urges the Court to excuse her deficient pleading because "it is too early" to make a determination as to her compliance with Rule 9(b). (Dkt. 19, Pl.'s Resp. Br., at 12.) If granted discovery, Plaintiff argues, she will be able to "determine the parties who made statements constituting fraud or irregularity." (*Id.*) This argument is not persuasive. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (explaining that after *Twombly* and *Iqbal*, plaintiffs "may not use the discovery process to obtain" facts necessary to state a plausible claim for relief "after filing suit").

### E.  Plaintiff's negligence claim is not sufficiently pled.

In support of her negligence claim, Plaintiff asserts that Defendants had a duty to "communicate with her honestly regarding her approval for a loan modification," "accept her monthly payments under the modified agreement," and "comply with the lender participation agreement as it relates to the [MHHP]." (Dkt. 1-2, Compl., at 5 ¶ 39–41.) She alleges that Defendants breached these duties by "not communicating . . . honestly" with her, "not accepting Plaintiff's third modified payment," and "not honoring the [MHHP] lender participation

---

allegations in both [Plaintiff's] response brief and his answers at oral argument" on a motion to dismiss).

agreement." (Dkt. 1-2, Compl., at 5–6 ¶ 42–44.) According to Plaintiff, these breaches caused her to "fall behind on her monthly payments," leading to the foreclosure and the loss of her home. (Dkt. 1-2, Compl., at 6 ¶ 45–46.)

As explained in detail above, a negligence claim that is intimately related to an oral promise by a financial institution is barred by the statute of frauds. To the extent that the Plaintiff's negligence claim does not have this relationship with Defendants' alleged oral promise, it still fails to state a claim for relief.

To state a negligence claim, Plaintiff must plead, with sufficient factual support, "(1) that the defendant owed a duty to [her], (2) that the defendant breached the duty, (3) that the defendant's breach of the duty caused [her] injuries, and (4) that [she] suffered damages." *Lelito v. Monroe*, 273 Mich. App. 416, 418–419 (Mich. Ct. App. 2006).

The Court agrees with Defendants that Plaintiff has not adequately pled that Defendants owed her any duty of care during the loan-modification process. Generally speaking, a "lender does not owe a duty of care to a loan applicant." *Yaldu v. Bank of America Corp.*, 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010) (applying Michigan law). And courts have expanded this rule to deny a duty of reasonable care in the loan modification context. *See, e.g.*, *Dingman v. OneWest Bank*, FSB, 859 F. Supp. 2d 912, 921 (E.D. Mich. 2012).; *Dorr v. Wells Fargo Bank, N.A.*, No. 13-14526, 2014 U.S. Dist. LEXIS 42040, at *22 (E.D. Mich. Mar. 3, 2014) (citations and internal quotation marks omitted), *report and recommendation adopted by* 2014 U.S. Dist. LEXIS 41588 (E.D. Mich. Mar. 28, 2014). Plaintiff cites no case law to the contrary.

Plaintiff's negligence claim also fails to the extent it alleges a breach of duty arising from the MHHP lender participation agreement because she did not plead facts that support a plausible claim. Plaintiff claims that "Defendant owed her a duty to comply with the lender participation

14

agreement as it relates to [MHHP]. . . . Defendant breached its duty by not honoring the Program's lender participation agreement." (Dkt. 1-2, Compl., at 5 ¶ 41, 44.) Elsewhere in her Complaint, Plaintiff adds that Defendants did not honor the lender participation agreement because they declined program funds even though she "was not yet in foreclosure at the time her *application* was submitted." (Dkt. 1-2, Compl., at 7 ¶ 58 (emphasis added).) As for the timing of her conditional approval, Plaintiff imprecisely says, "[i]n 2012." (Compl. ¶¶ 14, 17.) Finally, attached to the Complaint is an e-mail from Fannie Mae's Government and Industry Relations Office that explains Defendants' denial of MHHP funds:

> This email is in response to Congressman Levin's inquiry on behalf of his constituent Tyeissia [sic] Ross. Ms. Ross is questioning why a foreclosure of her property located at 3656 Poplar Avenue in Warren, MI occurred when she was attempting to acquire assistance from the Michigan's Hardest Hit program. Ms. Ross' loan was in *active foreclosure* when she received conditional approval for hardest hit funds. Unfortunately without final hardest hit funds approval prior to the scheduled foreclosure date 10/23/2012, the foreclosure did [move] forward as scheduled.[2]

(Dkt. 1-2, E-mail from Dale Dorr, at 3 (emphasis added).)

The lender participation agreement explicitly states that "foreclosure status" constitutes "good cause" to deny MHHP funds. (Dkt. 1-2, Compl. Ex. C, E-mail of Mar. 11, 2013 from Cassel to Ross.) And the lender decides whether to accept funds when the borrower receives conditional approval, *not* when the borrower submits her initial application to MHHP. Therefore, if the Property was in active foreclosure at the time of Plaintiff's conditional approval for MHHP funds, Defendants would not have breached their duties stemming from the lender participation agreement, if any, by rejecting program funds. And the exhibit attached to the complaint states that Plaintiff was in fact in active foreclosure when she received conditional approval. *See*

---

[2] This is consistent with Plaintiff's admission in her response brief that her home was in foreclosure status, albeit for a "very brief" time, when she was denied MHHP funds. (Dkt. 19, Pl.'s Resp. Br., at 19.)

*Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a 12(b)(6) motion, it may consider the Complaint and *any exhibits attached thereto . . . .*") (emphasis added).

As such, the Complaint and exhibits attached thereto do not provide "factual context that would render [the MHHP-based negligence claim] plausible." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 374 (6th Cir. 2011) (citations omitted). Given that the exhibits attached to the complaint establish the Defendants denied the MHHP funds for good cause and Plaintiff makes no other claims regarding the alleged breach, the Complaint merely pleads an "unadorned, the-defendant-unlawfully-harmed-me accusation" rather than a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Therefore, the Court will grant the motion to dismiss as to the negligence claim.

## F.   Claims regarding mortgage transactions cannot support a cause of action under the Michigan Consumer Protection Act.

Plaintiff also claims that Defendants violated the Michigan Consumer Protection Act. She alleges that, because "mistrust of financial institutions was at an all time high," Defendant offered her a loan modification only "as a public relations tactic."(Dkt. 1-2, Compl., at 6 ¶ 48–49.) As such, alleges Plaintiff, Defendant "did not disclose that there was a limitation of quantity in immediate conjunction with the advertised loan modification," and "caused a probability of confusion or of misunderstanding with respect to the authority of its salespersons and representatives, to negotiate the final terms of a loan modification," and as to her "legal rights, obligations, and remedies with regard to a loan modification." (Dkt. 1-2, Compl., at 6 ¶ 50–51.) Finally, Plaintiff alleges that Defendant "implied that a loan modification would be provided promptly, or within a reasonable time" when it knew that would not happen. (Dkt. 1-2, Compl., at 7 ¶ 53.)

16

The Michigan Consumer Protection Act does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). Defendants assert that because they were subject to state regulation under the Mortgage Brokers, Lenders and Servicers Act, Mich. Comp. Laws § 445.1651, and the authority of the Commissioner of the Office of Financial Services and Insurance, they are exempt from the MCPA. (Dkt. 13, Def.'s Br., at 22.) The Court agrees. *See Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 910 (E.D. Mich. 2003) ("Because [the] loan transactions [at issue] were generally authorized under laws administered by Commissioner of the Office of Financial Services and Insurance, the Court holds that the subject transactions were exempt from the Michigan Consumer Protection Act.") Moreover, with regard to Fannie Mae, a national bank subject to the authority of the Federal Housing Agency, "[i]t is well established that [Michigan Compiled Laws § 445.904(1)(a)] exempts the lending activities of banks regulated by either the State of Michigan *or* the federal government." *Chungag v. Wells Fargo Bank. N.A.*, No. 10-14648, 2011 U.S. Dist. LEXIS 15986, at *11 (E.D. Mich. Feb. 17, 2011). Defendants' actions are therefore not subject to the MCPA.

Plaintiff seeks to escape this authority by arguing that Defendants were "not in the act of lending" when the alleged violations occurred. (Dkt. 19, Pl.'s Resp. Br, at 18.) Rather, says Plaintiff, the term "lending" is limited to "service" under Michigan Compiled Laws § 445.1651(aa)–a statutory provision that does not contemplate her loss mitigation efforts. (*Id.* at 18 ("[S]ervicing . . . does not include efforts to save a home from foreclosure by way of partial payments or reinstatement through a government program.").) According to Plaintiff, the distinction between servicing and loss mitigation is analogous to the distinction between

construction and home cleaning drawn by the Michigan Court of Appeals in *Brownlow v. McCall Enterprise, Inc.*, No. 306190, 307883, 2013 WL 514598 (Mich. App. 2013). There, a homeowner brought a MCPA claim against a residential builder for property damage resulting from the builder's use of an ozone generator to cleanse the air in the house after a microwave fire. *Id.* at *2–3. The trial court held that the general transaction of "cleaning a home" was not contemplated by Michigan's licensure requirements for residential builders. *Id.* at *2. The Michigan Court of Appeals similarly concluded that the licensure requirements did not bar an action pursuant to the Michigan Consumer Protection Act. *Id.* at *3.

The Court disagrees with Plaintiff's comparison. The court in *Brownlow* declined to bring janitorial services within the scope of a licensing scheme that only contemplated "construction . . . [involving] changes to the physical structure of a building." 2013 WL 514598 at *2. By contrast, in the mortgage licensing context, both Michigan courts and federal courts applying Michigan law have consistently held, without qualification, that "[r]esidential mortgage transactions by banks . . . are exempt from the MCPA." *Morris v. Homeq. Servicing Corp.*, 2010 Mich. App. LEXIS 321, at *12 (Mich. Ct. App. Feb. 16, 2010).

A modification to the terms of an existing mortgage is appropriately deemed a residential mortgage transaction between a bank and a mortgagee. Such transactions are regulated under state and federal law. Therefore, Plaintiff cannot sustain her claim under the MCPA.

### G. Plaintiff cannot sustain her breach of contract claim.

Plaintiff bases her breach of contract claim on MHHP's lender participation agreement. She claims that Defendant breached the agreement by "denying Plaintiff without good cause shown," because there was no "pending litigation, potential fraud, poor payment history, bankruptcy restrictions, [or] foreclosure" pending when she applied. (Dkt. 1-2, Compl., at 7 ¶

57–58.) As a result, says Plaintiff, she was "denied an opportunity to reinstate her loan and save her Home." (Dkt. 1-2, Compl., at 8 ¶ 60.)

The problem with Plaintiff's breach-of-contract theory is that she has not pled facts sufficient to establish that she is a party to the lender participation agreement. "Under Michigan law, a breach-of-contract claim requires that the plaintiff establish that he or she was a party to the contract at issue." *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x  343, 346 (6th Cir. 2013) (citations omitted); *see also L Loyer Constr. Co. v. Novi*, 446 N.W.2d 364, 370 (Mich. Ct. App. 1989). Based on the materials before the Court, it appears that the only parties to the agreement are the Michigan State Housing Development Authority and Seterus, Inc. The Complaint directs the Court to an e-mail from a Michigan Homeowner Assistance Nonprofit Housing Corporation ("MHA") for an "expla[nation] of the Program approval process." (Dkt. 1-2, Compl., at 3 ¶ 17.) This e-mail explicitly notes that the lender participation agreement "explains our [MHA's] process with the servicer." (Dkt. 1-2, Compl. Ex. C, E-mail of Mar. 11, 2013 from Cassel to Ross.) The excerpted portion of the agreement refers to "the borrower" merely as an incident to describing the responsibilities of MHA and the loan servicer. And the Servicer Participation Agreement itself, a document central to the complaint and available at a web link that was included in the e-mail from MHA, notes that the agreement is "by and between the Michigan Homeowner Assistance Nonprofit Housing Corporation (MHA) and  _____ (Lender/Servicer)," and does not mention borrowers. Michigan State Housing Development Authority, Help for Hardest Hit Program Servicer Participation Agreement, *available at* http://www.michigan.gov/documents/mshda/Servicer_Participation_Agreement_6-10_325630_7.pdf.

Instead of drawing the Court's attention to well-pleaded facts showing that she is a party to the agreement, Plaintiff comments that "[t]he only question that exists is whether Plaintiff was a party to the Lender Participation Agreement." (Dkt. 19, Pl.'s Resp. Br., at 18.) The Court cannot answer this question in the affirmative based on the well-pleaded facts in the Complaint and documents central to it.

Moreover, Plaintiff has not pled facts to show that she is a third-party beneficiary of the contract with the ability to pursue a breach of contract claim despite not being a party to the agreement. In Michigan, "[a] third party beneficiary of a promise stands in the shoes of the promisee and is afforded the right under the common law and Mich. Comp. Laws Ann. § 600.1405 . . . to enforce the promise against the promisor." *Koppers Co. v. Garling & Langlois*, 594 F.2d 1094, 1098 (6th Cir. 1979). "[O]nly intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405." *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 391 (E.D. Mich. 2000) (citing *Koenig v. City of South Haven*, 597 N.W.2d 99, 105 (Mich. 1996)).

To enjoy third party beneficiary status, therefore, Plaintiff would have to plead facts to show that "the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for" her. Mich. Comp. Laws Ann. § 600.1405(1). The Michigan Supreme Court has explained that

> [i]n describing the conditions under which a contractual promise is to be construed as for the benefit of a third party to the contract in [section] 1405, the Legislature utilized the modifier "directly." Simply stated, section 1405 does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation "directly" to or for the person. This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.

*Shay v. Aldrich*, 790 N.W.2d 629, 638 (Mich. 2010) (quoting *Koenig v South Haven*, 597 N.W.2d 99, 104 (Mich. 1999)). "[W]hen read in context," this language is "clear that contracting parties' 'intent' with regard to third-party beneficiaries is to be determined solely from the form and meaning of the contract," that is, an "objective interpretation of the language." *Id.* at 639.

Here, Plaintiff has not pled or identified any contract provisions from the lender participation agreement demonstrating that the contractual relationship between MHA and Defendants is meant to benefit her directly. Nor has she pled facts to show that by standing in the shoes of the promisee, she would be able to enforce the contract. *Id.* at 640 (explaining that a third party beneficiary "stands in the shoes of the original promisee and only gains the same right that the original promisee would have had. Accordingly, a third-party beneficiary is not automatically entitled to the sought-after benefit merely by qualifying as a third-party beneficiary.")

The Court also draws support for its conclusion that Plaintiff is not a third-party beneficiary of the lender participation agreement from how courts have considered a borrower's status in the context of an analogous government program. Under the Home Affordable Modification Program ("HAMP"), like the program at issue here, loan servicers can enter into agreements with the government that may require them to perform certain loan modification and foreclosure prevention services. Most federal courts have declined to recognize a private right of action or that borrowers are third-party beneficiaries under HAMP agreements. *Ahmad v. Wells Fargo Bank, NA*, 861 F. Supp. 2d 818, 828–29 (collecting cases), *report and recommendation adopted by* 861 F. Supp. 2d 818, 820 (E.D. Mich. 2012).

In short, the Complaint and the documents central to it do not establish that Plaintiff was a party to or a third-party beneficiary of the lender participation agreement. Therefore, Defendant is entitled to judgment on the pleadings on the breach of contract claim.

**V.  CONCLUSION**

Plaintiffs' claims are either barred under the Michigan Statute of Frauds and the Michigan Consumer Protection Act, or have not been pled with sufficient particularity to state a plausible claim for relief.

Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  July 22, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 22, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson